UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-61417-CIV-COHN/SNOW

INTERNATIONAL STAR REGISTRY OF
ILLINOIS, an Illinois Limited Liability
Corporation,

      Plaintiff,

vs.

OMNIPOINT MARKETING, LLC, a Florida
Limited Liability Corporation, and its
successor-in-interest, RELATIONSERVE
MEDIA, INC., a Delaware Corporation,

      Defendants.

_____/

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE SECOND
AMENDED COMPLAINT, OR IN THE ALTERNATIVE, MOTION TO REMAND**

**THIS CAUSE** is before the Court upon Defendants' Motion to Dismiss the

Second Amended Complaint, or in the Alternative, Motion to Remand [DE 9].  The

Court has carefully considered the Motion, Plaintiff's Response [DE 14], Defendants'

Reply [DE 19] and the underlying record in this case, and is otherwise fully advised in

the premises.

I.  BACKGROUND

**A.  Procedural Background**

Plaintiff International Star Registry ("International Star") filed the instant action

against Defendants Omnipoint Marketing, LLC ("Omnipoint") and its successor-in-

interest RelationServe Media, Inc. ("RelationServe") (collectively "Defendants")[1] on

_____

    [1]  In May 2005, Omnipoint sold substantially all of its assets to RelationServe
Access, Inc., a subsidiary of RelationServe Media, Inc. and ceased operations as a

December 12, 2005 in the United States District Court for the Northern District of

Illinois.  In an effort to correct potential pleading deficiencies alleged in Defendants'

Motion to Dismiss and Motion to Transfer Venue, International Star filed two amended

complaints.  After the Second Amended Complaint ("Complaint") was filed, Judge John

W. Darrah of the United States District Court for the Northern District of Illinois issued

an Order denying Defendants' Motion to Dismiss, but granting Defendants' Motion to

Transfer.  (Mot., Exh. A.)  Judge Darrah did not address the sufficiency of the

allegations contained in the Complaint.  Rather, he determined that the forum-selection

clause contained on Omnipoint's website which requires that all actions brought

pursuant to the Terms and Conditions of the agreements between the parties be

brought in Broward County, Florida had been incorporated into the parties' agreement

and applied to the majority of claims alleged in the Complaint.  (Id., p. 7.)  The forum-

selection clause was silent as to whether cases were to be brought in state or federal

court.  In light of Judge Darrah's Order, the entire case was transferred to this Court on

September 19, 2006.  Defendants have now filed a Motion to Dismiss the Second

Amended Complaint, or in the Alternative, Motion to Remand.  The Motion alleges that

the Complaint fails to state a claim for relief.  Alternatively, the Motion states that even if

some of the claims have been sufficiently pled, International Star cannot establish

---

result of the sale.  (Aff. of Shawn McNamara, ¶ 7 [DE 9, Exh. B].)  Plaintiff alleges that
RelationServe, as successor-in-interest to Omnipoint, is responsible for the obligations
and liabilities incurred by Omnipoint.  (Compl., ¶ 6.)  However, according to the affidavit
of Shawn McNamara, Senior Vice President of RelationServe, RelationServe and its
subsidiaries did not assume any of Omnipoint's liabilities under the terms of the sale.
(Aff. of Shawn McNamara, ¶ 7.)  This issue need not be resolved by the Court at this
stage of the litigation.

damages in excess of $75,000.00 as required by 28 U.S.C. § 1332 to vest this Court

with diversity jurisdiction.

## B.  Factual Background

This case arises out of a business relationship between the parties by which

Defendants agreed to provide internet marketing services to International Star.  The

Complaint (Docket from transferred action, p. 240 [DE 1]) alleges the following four

counts: 1) Breach of Contract for the number of broadcast deliveries (Count I); 2)

Breach of Contract for the validity of list addresses (Count II); 3) Fraudulent Inducement

(Count III); and 4) Tortious Interference with Prospective Economic Advantage (Count

IV).  International Star seeks compensatory and punitive damages.  The following facts

gave rise to this action and are taken as true for purposes of deciding the instant

Motion.[2]

Between April 2004 and February 2005, International Star entered into various

agreements with Omnipoint for internet marketing services.  The terms of the

agreements were set forth on the invoices provided to International Star by Omnipoint.

The invoices contained the following statement: "By my signature below, I certify that I

have read and agree to the provisions set forth in this invoice and to the terms and

conditions posted at http://www.omnipointmarketing.com/genterms.html, and that I am

---

[2]  The facts herein were obtained from the Complaint and materials submitted by
the parties in support of their respective positions on the instant Motion.  Information
provided by the parties outside the scope of the facts alleged in the Complaint are
undisputed unless otherwise stated.

duly authorized to bind the following organization ("client") to such provisions."[3]
(Compl., Exh. I.)  The eMail Append Terms section of the website's terms states, in
pertinent part, "The law of the State of Florida shall apply to any resulting claim or
action, and the exclusive jurisdiction and venue for any proceeding brought pursuant to
these Terms and Conditions shall be Broward County, Florida."  (Aff. of Shawn
McNamara, Exh. 1, p. 5, 11 [DE 9, Exh. B].)

      Omnipoint agreed to send e-mail advertisements on International Star's behalf to
a list of e-mail addresses in Omnipoint's possession. (Compl., ¶¶ 10-12.)  The list
contained a total of 150,000,000 addresses.  (Compl., ¶ 12.)  The contracts specified
that International Star would be billed at various costs per thousand messages sent
("CPM").  (Compl., ¶ 13.)  Eventually, International Star decided that it wanted to send
its own e-mail broadcasts and the parties entered into an agreement by which
Omnipoint would sell International Star a list of 150,000,000 e-mail addresses at a cost
of $20,000.00.  (Compl., ¶¶ 13-14.)  The list sold to International Star was most likely
the same list Omnipoint had previously used to send e-mails on International Star's
behalf.  (Compl., ¶ 22.)  After receiving the list of addresses, International Star began
running test mailings of the list.  The tests indicated that approximately fifty percent of
the list's e-mail addresses were not working addresses.[4]  (Compl., ¶ 19.)  Based on the

---

    [3]  Subsequent agreements between RelationServe and International Star
directed the parties to the terms and conditions located on RelationServe's website.  As
discussed herein, the RelationServe invoices are not at issue in this action.  Therefore,
the terms on RelationServe's website need not be addressed.

    [4]  The addresses that did not work were classified as producing either a "hard"
bounce meaning that they did not exist at all or a "soft" bounce meaning that they may
have existed at one time or did still exist in another form, but were not active accounts

results of the test mailings and the alleged misrepresentations made by Omnipoint

regarding the list, International Star filed the instant lawsuit.

## II. MOTION TO DISMISS STANDARD[5]

In their Motion to Dismiss, Defendants assert that the Complaint should be

dismissed for failure to state a claim upon which relief may be granted.  It is long settled

that "a complaint should not be dismissed for failure to state a claim unless it appears

beyond a doubt that the plaintiff could prove no set of facts in support of his claim which

would entitle him to relief."  Conley v. Gibson, 355 U.S. 41 (1957); Marsh v. Butler

County, 268 F.3d 1014, 1022 (11th Cir. 2001).  The allegations of the claim must be

taken as true and must be read to include any theory on which the plaintiff may recover.

Cramer v. Florida, 117 F.3d 1258, 1262 n. 8 (11th Cir. 1997); see also Marsh, 268 F.3d

at 1023; Linder v. Portocarrero, 963 F.2d 332, 334-36 (11th Cir. 1992) (citing Robertson

v. Johnston, 376 F.2d 43 (5th Cir. 1967)).

## III.  CHOICE OF LAW ANALYSIS

As a preliminary matter, the Court must determine whether Florida or Illinois law

applies to the issues in this case.  Defendants argue that Florida law applies in light of

---

at the time the messages were sent.  (Compl., ¶¶ 20-21.)

    [5]  "As a general rule, courts should address issues relating to personal
jurisdiction before reaching the merits of a plaintiff's claims."  Republic of Panama v.
BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 940 (11th Cir. 1997).  However, in
this case, the Court must first determine which counts, if any, are sufficient to survive
the Motion to Dismiss.  Once the Court decides which law applies and under that law,
which counts have been sufficiently pled, it can determine whether the amount in
controversy exceeds $75,000.00.  Consequently, the Court will consider the merits of
Plaintiff's claims before deciding whether this Court has original jurisdiction over the
matter.

the choice of law provision incorporated into the parties' agreements.  In its Response, International Star provides the Court with case law from both Illinois and Florida but never opines as to which law applies.

In the Order transferring the case to this Court, Judge Darrah evaluated whether the forum-selection clause contained on Omnipoint's website was incorporated into the agreements between the parties.  Applying the law regarding incorporation which is the same under both Florida and Illinois law, Judge Darrah concluded that the forum-selection clause was incorporated by reference into those invoices which were signed by International Star's representative and contained reference to Omnipoint's website. Judge Darrah found that those invoices which were not signed were not contracts, and were therefore not open to interpretation by the Court.  (Mot., Exh. 2.)  The only invoice which was signed and did not contain reference to the website was Invoice 7460A, the invoice regarding the sale of the list of 150,000,000 addresses to International Star in exchange for $20,000.00.  (Compl., Exh. I)  This Court agrees with Judge Darrah's determination that the provision on the remaining invoices clearly expresses the parties' intent to be bound by the terms on Omnipoint's website.  As such, adopting Judge Darrah's rationale, the Court finds that the choice of law clause was incorporated by reference into those invoices which were signed and reference the terms on the website.

The Court must next determine which law applies to the interpretation of claims arising out of Invoice 7460A which does not incorporate by reference a choice of law

clause.[6]  "In determining which law applies, a federal district court sitting in diversity must apply the choice of law rules of the forum state."  <u>Trumpet Vine Invs., N.V. v. Union Capital Partners I, Inc.</u>, 92 F.3d 1110, 1115 (11th Cir. 1996); <u>see also</u> <u>Klaxon Co. v. Stentor Electrical Manufacturing Co.</u>, 313 U.S. 487, 496 (1941).  Florida uses the traditional *lex loci contractus* theory in determining which law applies in contract claims.  <u>Fioretti v. Mass. Gen. Life Ins. Co.</u>, 53 F.3d 1228, 1235 (11th Cir. 1995); <u>Jemco, Inc. v. United Parcel Service, Inc.</u>, 400 So. 2d 499, 501 (Fla. 3d DCA 1981).  Under the theory of *lex loci contractus*, "in the absence of a contractual provision specifying the governing law, a contract (other than one for the performance of services) is governed by the law of the state in which the contract is made, i.e. where the last act necessary to complete the contract is done."  <u>Fioretti</u>, 53 F.3d at 1235.

In this case, the last act necessary to complete the parties' agreement as detailed in Invoice 7460A was delivery of the signed invoice to Omnipoint.  <u>See</u> <u>Royal Surplus Lines Ins. Co. v. Delta Health Group, Inc.</u>, Case No. 03CV419-RS, 2006 WL 167565, at *2 (N.D. Fla. Jan. 23, 2006) (last act necessary was delivery of contract to defendant).  Since Omnipoint's offices are located in Florida, it can be inferred that this final step occurred in Florida.  Therefore, Florida law also applies to the interpretation of Invoice 7460A and any claims arising out of it.

Finally, the Court must determine whether Florida or Illinois law applies to the tort claims.  "'[C]laims arising in tort are not ordinarily controlled by a contractual choice of

---

[6]  Invoice 7460A specifically states that it replaces Signed Invoice 7460. Therefore, the website terms incorporated into Invoice 7460 were superceded by the new agreement.

law provision . . .Rather, they are decided according to the law of the forum state.'"

Dickinson v. Executive Bus. Group, Inc., 983 F. Supp. 1395, 1398 (M.D. Fla. 1997)

(quoting Burger King Corp. v. Austin, 805 F. Supp. 1007, 1012 (S.D. Fla. 1992)).

Florida applies the "most significant relationship test" to determine which state's law

applies to tort claims.  Bishop v. Fla. Specialty Paint Co., 389 So. 2d 999, 1001 (Fla.

1980).  According to the Restatement (Second) of Conflict of Laws, §§ 145-146 as

adopted by the Florida Supreme Court in Bishop, the following factors should be given

consideration when determining which state has the most significant relationship to the

tort at issue: 1) "the place where the injury occurred;" 2) "the place where the conduct

causing the injury occurred;" 3) "the domicil, residence, nationality, place of

incorporation and place of business of the parties;" and 4) "the place where the

relationship, if any, between the parties is centered."  Bishop, 389 So. 2d at 1001;

Connell v. Riggins, — So. 2d —, 2006 WL 3679347, at *2 (Fla. 1st DCA Dec. 15, 2006).

In the instant case, although both Florida and Illinois have a relationship to the case,

the Court finds that Florida has more significant ties to the events at issue.

International Star contacted Omnipoint in Florida to initiate the relationship between the

parties.  The list of e-mail addresses was maintained by Ominpoint in Florida, the

marketing e-mails were sent from Omnipoint's offices in Florida, the e-mail list was sent

to International Star from Florida, and the invoices at issue were provided from

Omnipoint in Florida.  Further, any misrepresentations about the list's contents were

made by Omnipoint's employees in Florida.  Consequently, applying the "most

significant relationship" test, Florida law applies to Counts III and IV of this case.

IV.  MERITS OF CLAIMS

**A.  Breach of Contract (Counts I and II)**

The first issue is whether International Star has sufficiently pled its breach of contract claims to survive Defendants' Motion to Dismiss.  If the Court determines that Counts I and/or II state a valid claim for relief, the Court must decide which invoices are at issue in this case.  As discussed below, the Court finds that in light of the lenient motion to dismiss standard, Count I states a valid claim for relief.  Count II, however, shall be dismissed with prejudice without leave to amend.

Under Florida law, the elements of a breach of contract action are: "1) a valid contract; 2) a material breach; and 3) damages." Abbott Lab., Inc. v. Gen. Elec. Capital, 765 So. 2d 737, 740 (Fla. 5th DCA 2000).  In this case, Count I alleges breach of contract as to those contracts for distribution of advertisements to e-mail addresses. Count II addresses the contract between the parties for sale of the list of addresses to International Star.  The parties do not dispute that the invoices constitute contracts between the parties and that International Star suffered damages because not all of the e-mail addresses on Omnipoint's list were functioning.  However, the parties disagree as to which contracts were allegedly breached based on the language in the Complaint, and whether there was a material breach of the contracts in light of the disclaimer provisions contained in the invoices.

Although the Court agrees that the Complaint does not specifically delineate which contracts fall within the purview of the Complaint, as noted by Defendant, where there is a "conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c), Fed. R. Civ. P., the exhibit prevails." Fayetteville

9

Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991).  The

following invoices are attached as Exhibits I and II to the Complaint:

1.   Omnipoint Invoice # 7810 for Opt-In Broadcast to 240,000,000 addresses for

a total cost of $22,000.00 signed by an International Star representative on January 31,

2004 and initialed by a second unidentified individual.  The invoice is not dated;

2.   Omnipoint Invoice # 5246 dated April 7, 2004 is a six-page invoice detailing

18 Opt-In Broadcasts to various numbers of e-mail addresses for a total cost of

$15,999.99 signed by an International Star representative on April 8, 2004.  Thirteen of

the broadcasts were sent to 3,846,153 addresses at a cost of $789.23, three

broadcasts were sent to 10,000 addresses at a cost of $2,000.00, and the remaining

two broadcasts were sent to 10,000 addresses at no charge;

3.   Omnipoint Invoice # 7460 dated November 19, 2004 contains three entries

for a total cost of $50,000.00.  The first is an Opt-In Broadcast sent to 150,000,000 e-

mails for a cost of $30,000.00.  The second states that it is a "CPA Target Broadcast" to

150,000,000 e-mails with a charge of $0.00 listed.  The final entry is for a Data

Purchase of 150,000,000 at a cost of $20,000.00.  The Invoice was signed by an

International Star representative on November 22, 2004 and initialed by a second

unidentified individual;

4.   RelationServe Invoice # 7460-IN dated November 24, 2004 expressly states

that it replaces previously signed Invoice # 7460.  It repeats the $30,000.00 charge and

the CPA Broadcast from Invoice # 7460.  It does not address the $20,000.00 Data

Purchase charge.  This invoice is not signed;

5.  RelationServe Invoice # 7460A-R[7] dated March 31, 2006 expressly states that it is a duplicate invoice.  It repeats the $20,000.00 Data Purchase Charge from Invoice # 7460.  This invoice is not signed;

6.  Omnipoint Invoice # 7460A specifically states that it replaces signed Invoice # 7460.  It is not dated.  It repeats the $20,000.00 Hard Data charge from Invoice # 7460, and was signed by an International Star representative on November 23, 2004 and initialed by a second unidentified individual.

The Court finds that at this stage of the litigation, those invoices signed by a representative of International Star are contracts at issue in this case.  Invoice # 7460-IN and Invoice # 7460A-R are not signed, and will therefore not be considered in this case.  Since they were not signed, Invoice # 7460 remains in effect as it relates to the $30,000.00 broadcast charge.[8]  The $20,000.00 Hard Data charge was superceded by Invoice # 7460A.  The remaining invoices represent agreements between the parties which are sufficiently related to the allegations in the Complaint to be considered at issue in this litigation.[9]

---

[7]  The number on the exhibit is blurred.  However, the Court believes that it reads # 7460A-R and will refer to this invoice as such hereinafter.

[8]  Whether the $30,000.00 charge and the CPA Target Broadcast line-item for $0.00 was superceded by Invoice # 7460 which does not reference the charge is an issue of contract interpretation not currently pending before this Court.  The Court will therefore construe the contracts in the light most favorable to International Star and find that the $30,000.00 charge remains at issue.

[9]  As stated by Defendants, the Complaint clearly states that the contracts at issue involve the distribution of advertisements to 150,000,000 e-mail addresses. (Compl., ¶ 13.)  Since many of the invoices discuss distribution to different numbers of addresses, the Court recommends that International Star amend the Complaint to resolve this discrepancy before refiling the case in state court.

Defendants next allege that even if the invoices attached to the Complaint are found to be part of the instant action, International Star cannot allege a viable claim for breach because each invoice contains the following disclaimer:

> Omnipoint Marketing makes no guarantees as to results of any campaigns.  Results vary based on the offer, the target audience and other variations.  Advertisers acknowledge that they are paying Omnipoint Marketing for a service and that no guarantees were expressed or implied and that the advertiser understands Omnipoint Marketing has a no refund, no exception policy.

Invoice # 7460A also contains a disclaimer which reads: "The data [sic] received as a result of Omnipoint's brokerage and is delivered "as is" . . . Omnipoint makes no claims of fitness for any purpose with respect to the data and no warranties or indemnification of any kind."

The Court finds that the general disclaimer contained in all of the invoices regarding guarantees as to results of the campaign does not clearly preclude International Star from bringing the instant breach of contract claim for failure to broadcast to valid e-mail addresses.  The provision does not necessarily indemnify Defendants from any liability if the e-mail addresses targeted were not working.  Rather, it states that Omnipoint does not guarantee the campaign's results.  Since the Court does not find this contract term entirely unambiguous, taken in the light most favorable to International Star, Defendants' Motion to Dismiss Count I shall be denied as Count I addresses those contracts for broadcast of advertisements to e-mail addresses.  The invoices which remain at issue are # 7810 for $22,000.00, # 5246 for $15,999.99, and #7460 for $30,000.

On the other hand, the provision contained in Invoice # 7460A clearly and

12

unambiguously states that International Star agrees to the purchase of the list "as is." Even taking the terms of the agreement and the facts of the case in the light most favorable to International Star, the Court finds that International Star cannot state a valid claim for breach of contract of Invoice # 7460A.  International Star expressly agreed to accept the list "as is," and cannot now argue that the list failed to meet its expectations.  Consequently, Count II which Plaintiff states is intended to address the contract for sale of Omnipoint's list, Invoice # 7460A, shall be dismissed with prejudice. The Court need not grant leave to amend this Count because amendment would be futile.[10]

### B.  Fraudulent Inducement (Count III)

Defendants next move to dismiss International Star's claim for fraudulent inducement arguing that International Star fails provide facts separate and distinct from the breach of contract claim and that the claim is therefore barred by the economic loss doctrine.  Under Florida law, to state a cause of action for fraud in the inducement, a party must establish the following elements: 1) a false statement regarding a material fact; 2) the person making the statement knew or should have known that the representation was false; 3) intent by the person making the statement to induce action or reliance; and 4) injury suffered because of justifiable reliance on the representation. Biscayne Inv. Group, Ltd. v. Guar. Mgmt.Servs., Inc., 903 So. 2d 251, 255 (Fla. 3d DCA

---

[10]  The following bases may warrant a district court's denial of leave to amend: "'undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment [and] futility of amendment.'"  Thomas v. Davie, 847 F.2d 771, 774 (11th Cir. 1988) (quoting Forman v. Davis, 371 U.S. 178, 182 (1962)).

2005) (citing <u>Samuels v. King Motor Co.</u>, 782 So. 2d 489 (Fla. 4th DCA 2001)).

Although the Court finds that the Complaint may state a valid claim for fraudulent

inducement, Count III shall nevertheless be dismissed because it is barred by the

economic loss doctrine.

The economic loss rule represents the proposition that "[i]n the absence of

personal injury or property damage, a party is generally not entitled to initiate an action

in tort to recover an economic loss." <u>Sarkis v. Pafford Oil Co., Inc.</u>, 697 So. 2d 524, 527

(Fla. 1st DCA 1997) (citing <u>Casa Clara Condominium Assoc., Inc. v. Charley Toppino &</u>

<u>Sons, Inc.</u>, 620 So. 2d 1244 (Fla. 1993)).  "This rule is based on the premise that

parties to a contractual relationship have allocated their respective rights and remedies

and consequently it is inappropriate to introduce tort remedies." <u>Id.</u>  There are,

however, certain torts which can succeed even where the parties have a contractual

relationship.  "Where a contract exists, a tort action will lie for either intentional or

negligent acts considered to be independent from the acts that breached the contract."

<u>HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.</u>, 685 So. 2d 1238, 1239 (Fla. 1996).

Fraudulent inducement is such an example because it is a tort independent of a breach

of contract claim in that it "'requires proof of facts separate and distinct from the breach

of contract.'" <u>Indemnity Ins. Co. v. Am. Aviation, Inc.</u>, 891 So. 2d 532, 537 (Fla. 2004)

(quoting <u>HTP</u>, 685 So. 2d at 1239).  "[A] truly independent cause of action for fraudulent

misrepresentation, where the ability of one party to negotiate fair terms is undermined

by the other's fraudulent behavior, is not barred by the economic loss rule." <u>Hotels</u>, 694

So. 2d at 77.  Nevertheless, not all claims for fraud in the inducement are exempt from

the economic loss rule because "one cannot avoid the economic loss rule by merely

labeling a claim as fraud in the inducement, the fraud must be separate and distinct from the breach party's performance of the contract." Medalie v. FSC Sec., Corp., 87 F. Supp. 2d 1295, 1305 (S.D. Fla. 2000) (citing Hotels of Key Largo, Inc. v. RHI Hotels, Inc., 694 So. 2d 74, 77 (Fla. 3d DCA 1997)).

The instant case can be analogized to Hotels of Key Largo, Inc. v. RHI Hotels, Inc., 694 So. 2d 74 (Fla. 3d DCA 1997).  In Hotels, the court found that the plaintiff's fraud in the inducement claim was barred by the economic loss rule.  The parties entered into a licensing agreement whereby the plaintiff would pay a licensing fee to become part of the defendants' hotel chain.  Id. at 75.  Before the plaintiffs signed the agreement, the defendants made numerous representations about the performance of plaintiff's hotels once they joined the hotel chain.  Id.  The court noted that a "critical distinction must be made where the alleged fraudulent misrepresentations are inseparably embodied in the parties' subsequent agreement" such as where the contract contains an integration clause.  Id. at 77.  The court found that the integration clause in the contract superceded any alleged misrepresentations made before the parties entered into the hotel licensing agreements.  Id.  The misrepresentations were "interwoven and indistinct from the heart of the contractual agreement."  Id.  Further, the allegations contained in the fraudulent misrepresentation claim were no different than those the plaintiffs could have brought had the contract included a warranty of quality and performance.  Id.  Therefore, the claim was barred by the economic loss rule.

In this case, the Complaint alleges that Omnipoint fraudulently induced International Star to enter into an agreement to purchase the e-mail list by making misrepresentations regarding the validity and uniqueness of the e-mail addresses.

15

International Star states that its claim for fraud in the inducement is separate and distinct from its breach of contract claim because the damages suffered including the time, money and resources spent testing and attempting to use the list purchased from Omnipoint, are distinct from those sought in the breach of contract claim.  The Court does not find this position persuasive.

As in <u>Hotels</u>, the representations regarding the validity of the e-mails goes to the heart of the contractual agreement.  The claims in Count III are indistinguishable from the claim International Star could have brought if the invoice for purchase of the e-mail list did not contain an "as is" disclaimer.  International Star elected to sign an invoice for sale of the e-mail list which contained an "as is" provision.  Its ability to negotiate the terms of the invoice to protect itself in case it received a list of faulty e-mails was not hampered by the statements made by Omnipoint prior to the signing of the invoice. <u>See</u> <u>Medalie</u>, 87 F. Supp. 2d at 1305-06.  Further, the facts contained in Count III are inseparable from those alleged in Count II of the Complaint.  International Star ineffectively attempts to distinguish the tort claim by seeking different damages. International Star is merely trying to disguise a claim for breach of contract in a claim for fraud in the inducement, a practice expressly barred by the economic loss rule in Florida.  Therefore, Count III of the Complaint shall be dismissed and since amending the Complaint would be futile, International Star will not be granted leave to amend.[11]

---

[11] During the pendency of this action, International Star has filed two amended complaints and a response to Defendants' Motion to Dismiss.  Not one of these documents provides a basis by which International Star could argue a claim for relief in light of the application of the economic loss doctrine.  As such, the Court finds that granting leave to amend would be futile.

## C.  Tortious Interference (Count IV)

As with claims for fraud in the inducement, a claim for tortious interference can survive the application of the economic loss rule where the facts alleged in the tort claim are separate and distinct from those necessary to prove the breach of contract claim. See Eclipse Medical, Inc. v. Am. Hydro-Surgical Instruments, Inc., 262 F. Supp. 2d 1334, 1353-54 (S.D. Fla. 1999).  Here, however, as with International Star's fraud in the inducement claim, the Court finds that the facts alleged in Count IV of the Complaint are indistinguishable from those stated in the breach of contract claim.  International Star has failed to establish that its claim for tortious interference is an independent tort. Therefore, Defendants' Motion to Dismiss shall be granted as to Count IV of the Complaint because Count IV is barred by the economic loss rule.  Again, the Court shall not grant leave to amend as any amendment would be futile.

## V.  SUBJECT MATTER JURISDICTION

The Court must now determine whether it has jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1332.  Where there is complete diversity of citizenship between the parties, 28 U.S.C. § 1332 vests federal district courts with original jurisdiction where the amount in controversy exceeds $75,000.00.  The parties agree that there is complete diversity of citizenship in this case.  Defendants however argue that Plaintiff has failed to meet the amount in controversy requirement of 28 U.S.C. § 1332.

"The general federal rule has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed 'in good faith.'" Horton v. Liberty Mut.

17

Ins. Co., 367 U.S. 348, 353 (1961); see also Federated Mut. Ins. Co. v. MicKinnon

Motors, LLC, 329 F.3d 805, 807 (11th Cir. 2003).  To justify dismissal for lack of

jurisdiction, it must appear from the complaint "to a legal certainty that the claim is really

for less than the jurisdictional amount."  Federated Mut., 329 F.3d at 807; see also

Burns v. Windsor Ins., 31 F.3d 1092, 1094 (11th Cir. 1994) (citing St. Paul's Indem.

Corp. v. Red Cab Co., 58 S.Ct. 586, 590 (1938)).

Based on the Court's foregoing conclusions, the amount in controversy now

equals $67,999.99 ($22,000.00 + $15,999.99 + $30,000.00) which is less than the

$75,000.00 amount in controversy requirement of 28 U.S.C. § 1332.  Although the

Court does not believe that International Star included the other counts in bad faith, it is

now clear "to a legal certainty" that the claims stated in the Complaint do not exceed

$75,000.00.  The remaining invoices at issue in the case equal $67,999.99.

Additionally, the terms on Omnipoint's website which were incorporated by reference

into the contracts specifically state, "THE LIMIT OF EITHER PARTY'S LIABILITY

(WHETHER IN CONTRACT, TORT, OR OTHERWISE) FOR ANY AND ALL CLAIMS

RELATED TO THIS AGREEMENT SHALL NOT IN THE AGGREGATE EXCEED THE

FEES PAYABLE TO Omni Point Marketing UNDER THIS AGREEMENT."  (Aff. of

Shawn McNamara, Exh. 1, pp. 5-6, § 13 [DE 9, Exh. B] (capitalization in original).)

Therefore, International Star is not entitled to damages is excess of $67,999.99.

Consequently, this Court does not have subject matter jurisdiction pursuant to 28

U.S.C. § 1332 as International Star has failed to establish that the amount in

controversy exceeds $75,000.00.  The remaining claim, Count I, shall be dismissed

without prejudice to allow International Star leave to refile the case in state court.[12]

## VI.  CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1.  Defendants' Motion to Dismiss the Second Amended Complaint, or in the Alternative, Motion to Remand [DE 9] is **GRANTED**.

2.  Counts II, III and IV of the Second Amended Complaint are **DISMISSED WITH PREJUDICE**.

3.  Count I of the Second Amended Complaint is **DISMISSED WITHOUT PREJUDICE** as it relates to Invoice # 7810 for $22,000.00, # 5246 for $15,999.99, and #7460 for $30,000.00.  Plaintiff International Star Registry of Illinois may refile Count I in state court.

4.  The Clerk of the Court shall **CLOSE THIS CASE** and **DENY** all pending motions as moot.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 29th day of January, 2007.

JAMES I. COHN
United States District Judge

Copies to:
All counsel of record

---

[12]  Since the case was originally filed in federal court, it shall be dismissed without prejudice rather than remanded as requested by Defendants.

19